IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUFUS BYERS,

    Plaintiff,

vs.                                                                                          Case No. 15-24 MCA/SCY

FNU LNU, Bernalillo County Metropolitan
Detention Center Director, BERNALILLO COUNTY
BOARD OF COMMISSIONERS, RAMON C. RUSIN,
Chief of Corrections Department, TOM ZDUNEK, County
Manager, THOMAS E. SWISSTACK,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendants' Motion for Summary Judgment on the Basis of Plaintiff's Failure to Exhaust Administrative Remedies. *Doc. 7*. In this Motion, Defendants argue that Plaintiff's claims are procedurally barred by the administrative exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). Having reviewed the evidence in the light most favorable to Plaintiff, however, I find that a question of fact exists with regard to whether administrative procedures were available to Plaintiff to contest the events that form the basis of his complaint.[1] I therefore recommend that the Court deny Defendants' Motion for Summary Judgment.

    **I.**    **Background**

In his complaint, Plaintiff alleges that Defendants, Bernalillo County Board of Commissioners and three Bernalillo County employees who appear to be affiliated with the Bernalillo County Metropolitan Detention Center ("MDC"), violated his constitutional rights by

---

[1] In reaching this conclusion, I considered Defendants' Motion for Summary Judgment (*Doc. 7*), Plaintiff's Response (*Doc. 9*), and Defendants' supplemental brief (*Doc. 11*). Plaintiff's deadline for filing a response to Defendants' supplemental brief has passed without Plaintiff submitting further argument or evidence to the Court.

transporting him across state lines, via bus, to a detention facility in Polk County, Texas on or around February 14, 2014. *Doc. 1*, Ex. A at 3. Plaintiff claims that he was left in tight handcuffs and not given bathroom breaks during this twenty-hour trip. *Id.* He also complains that Defendants maliciously forced him to "bend over, . . . hold [his] 'Growings,' [and] spread [his] butt cheeks" prior to placing him on the bus and then prevented him from contacting his family or counsel while in Texas to tell them his whereabouts  *Id.* at 3-4.

On January 9, 2015, Defendants removed the lawsuit to federal court. *Doc. 1*. In their answer, they argued that the Court should dismiss Plaintiff's federal claims because he "has or may have failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act." *Doc. 4* at 12. Because this is an affirmative defense going to the Court's jurisdiction, the Court entered an order requesting further briefing and evidence on this issue. *Doc. 6*. This prompted Defendants to file a Motion for Summary Judgment on February 27, 2015. *Doc. 7*.

The evidence attached to this Motion confirms that the Second Judicial District Court, County of Bernalillo, State of New Mexico incarcerated Plaintiff between March 20, 2012 and March 26, 2014. *Doc. 7*, Ex. B-C. During this period, Plaintiff spent the majority of his time jailed at the Bernalillo County Metropolitan Detention Center ("MDC"). Due to overcrowding, however, on February 14, 2014, Bernalillo County transferred Plaintiff from MDC to a facility in Polk County, Texas called IAH Secure Adult Detention Facility ("IAH"). *Doc. 7*, Ex. B ¶¶ 4-7. After this transfer, which forms the basis of Plaintiff's complaint, Plaintiff remained at IAH until March 13, 2014, when he was transferred to Torrance County Detention Facility ("Torrance County"), another facility that contracts with Bernalillo County to house defendants in cases of overcrowding. He remained in Torrance County from March 13, 2014 until March 25, 2014. *Id.* He was then returned to MDC for a very short period: March 25, 2014 to March 26, 2014. *Id.*

2

Between the February 14, 2014 transfer and his March 26, 2014 release from MDC custody, Plaintiff did not file any grievances with IAH, Torrance County, or MDC regarding any matter, including the bus trip discussed in the complaint. *Doc. 7*, Ex F-H; *Doc. 11*, Ex. N, P.

Plaintiff is currently incarcerated at the Roswell Correctional Center ("RCC") where he is serving a seven and half year sentence for human trafficking and promoting prostitution. *Doc. 3*, Ex. B; *Doc. 7*, Ex. A. According to an email written by an Administrative Law Judge Adjudicator working for RCC, Plaintiff arrived at RCC on May 16, 2014, but has not filed any grievances since that time. *Doc. 11*, Ex. T. The record does not indicate where Plaintiff was during the fifty-one day period between the time he left MDC custody and the time he began RCC custody. Because Plaintiff had already been sentenced to more than seven years of incarceration at the time he left MDC custody, however, Plaintiff was likely in custody somewhere during this period.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56(a), a party may receive summary judgment if that party "shows that there is no genuine dispute as to any material fact and [the party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus.*, Inc., 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Where the facts are not in dispute . . . , summary disposition is appropriate." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (citing FED. R. CIV. P. 56(c)).

### III.   Discussion

The Prison Litigation Reform Act ("PLRA") provides, among other things, that "[n]o action . . . with respect to prison conditions" under § 1983 may be brought "by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). All prisoners who are incarcerated at the time of filing are required to comply with this exhaustion requirement. *Norton v. The City of Marietta, Okla.*, 432 F.3d 1145, 1150-51 (10th Cir. 2005). This includes prisoners who are incarcerated at a different facility than the facility about which the prisoner is complaining. *See Ruggiero v. County of Orange*, 467 F.3d 170, 177 (2d Cir. 2006) (PLRA exhaustion requirement applied because transfer did not render administrative remedies unavailable to the plaintiff); *Dillon v. Rogers*, 596 F.3d 260, 267 (5th Cir. 2010) ("If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility."). In such a case, when assessing a PLRA exhaustion defense, the Court will need to consider what remedies were available to the plaintiff in light of the transfer. *Dillon*, 596 F.3d at 267.

Here, Defendants argue that Plaintiff has not satisfied the PLRA exhaustion requirement because Plaintiff "did not submit any grievances at the various detention facilities and prisons where he was housed since [the date of the events discussed in the complaint]." *Doc. 11* at 5.[2] In

---

[2] Defendants have not explained where Plaintiff was during the fifty-one days between March 26, 2014 and May 16, 2014. Thus, it is possible that Plaintiff could have filed a grievance at the facility where he was in custody during this time (assuming he was in custody).  Nonetheless, because Defendants have not presented any information about

4

making this argument, Defendants do not address the issue of grievance filing deadlines and instead assume that Plaintiff could have timely filed a grievance at any of the institutions where Plaintiff was incarcerated. Such an unrestricted filing period, however, is inconsistent with the MDC grievance policy, which directs detainees to file any grievances they may have using the "Request Manager" (housed in a computer kiosk within MDC), and to do so within ten days of the alleged incident or situation. *Doc. 7*, Ex. E-F. Given this policy, only the ten days following an alleged incident are relevant; if a prisoner filed a grievance outside of this ten day period, Defendants would likely argue that the prisoner failed to exhaust his administrative remedies by not filing a timely grievance. Nonetheless, with the exception of the fifty-one day period about which the Court has no information, the Court will address whether Plaintiff had an opportunity to file a grievance at any of the institutions where he was held subsequent to the occurrence of the alleged incidents.

It is indisputable that Plaintiff had no opportunity to file a grievance with MDC under the terms of the MDC grievance policy. The filing of a grievance within ten days using the Request Manager is the one and only method for submitting grievances described in the written MDC policy; no provision exists for prisoners who are transferred from MDC to another facility to mail or otherwise forward grievances to MDC within the ten-day period.[3] *Id.* Due to his transfer, Plaintiff did not have access to the computer kiosk in the ten day period after the alleged misconduct discussed in the complaint and had no manner of complying with the above outlined

---

this period and whether Plaintiff's filing of a grievance during this period would not affect my recommendation, I will not address this period of time.

[3] Defendants have provided the Court with an affidavit of the MDC Social Services Coordinator which states: "An MDC detainee who is being housed or detained at a separate facility can file grievances at that separate facility. In my experience, those grievances find their way back to MDC and then are processed at MDC just as if they had been originally filed at MDC." *Doc. 7*, Ex. F ¶ 21. While this suggests that detainees may have been able to file complaints about MDC after being transferred, the written policy does not contain any mention of this process. Furthermore, as discussed in detail below, the grievance policies of the other facilities where MDC detainees were housed do not uniformly allow for the filing of MDC grievances.

terms of the MDC policy.  By the time Plaintiff returned to MDC (March 25, 2014 to March 26, 2014), his time for filing a grievance about the bus trip had expired. Moreover, even if MDC would have entertained a grievance at this time, it is not certain that Plaintiff had access to the computer kiosk during his very brief return to MDC.

The grievance procedures for IAH, where Plaintiff was held immediately following the February bus trip, state that detainees "may file a formal written grievance any time within fifteen (15) days after an incident has occurred." *Doc. 11*, Ex. L at 2. They further explain that a grievance may be initiated for "an alleged violation of civil, constitutional or statutory rights and policy." *Id.* Central to the present analysis is whether these procedures allowed for the filing of complaints regarding the conduct of MDC transport officers.

Despite Defendants' implicit argument that the answer to this question is "yes," the evidence Defendants provided suggests otherwise. The IAH grievance log for New Mexico inmates includes an entry regarding a grievance filed by an inmate complaining that he was brought to IAH against his will. IAH staff responded to this grievance as follows: "you will need to take matter up with New Mexico." *Doc. 11*, Ex. M at 2. If IAH staff did, in fact, refuse to handle grievances regarding MDC transport, their grievance procedures can hardly be said to have been available to Plaintiff for complaining about the February 2014 bus trip. *See Booth v. Churner*, 532 U.S. 731, 736 (2001) (administrative exhaustion is not required under the PLRA "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint"). Given that Defendants carry the burden of proof and all reasonable inferences from the factual record must be drawn in the light most favorable to Plaintiff, I conclude that a question of fact exists as to whether Plaintiff could have availed himself of grievance procedures at IAH.

Nor did Plaintiff's subsequent transfer to Torrance County provide him with any new remedies that he could have, but failed to, exhaust. A cursory reading of the Torrance County grievance policies demonstrates that Torrance County only permitted inmates to file grievances about matters within the authority of Corrections Corporation of American, the Torrance County facility administrator. *Doc. 11*, Ex. Q. In fact, the Torrance County policy explicitly states that inmates cannot use the Torrance County procedures to grieve "[c]ontracting agency . . . policies, procedures, decisions, or matters." *Id.* at 3-4. This directly contradicts any claim that Plaintiff could have filed a grievance with Torrance County about MDC staff misconduct. Similarly, the RCC grievance procedures clearly state that grievances should not be filed about any matter outside the control of the New Mexico Corrections Department. Inmate Grievances CD-150500[4] at 7. In light of the above analysis, I cannot conclude, as a matter of law, that administrative procedures existed and were available to Plaintiff for grieving the issues raised in the complaint. I therefore recommend that the Court deny Defendants' Motion for Summary Judgment.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

[4] This portion of the New Mexico Corrections Department Grievance policy may be found at http://cd.nm.gov/policies/docs/CD-150500.pdf.