IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUFUS BYERS,

       Plaintiff,

v.                                          2:15-cv-00024-MCA-LF

BERNALILLO COUNTY METROPOLITAN
DETENTION CENTER DIRECTOR-JOHN DOE;
BERNALILLO COUNTY BOARD OF COMMISSIONERS;
RAMON C. RUSTIN, CHIEF OF CORRECTIONS DEPARTMENT;
TOM ZDUNEK, COUNTY MANAGER; AND
THOMAS E. SWISSTACK,

       Defendants

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON MOTION FOR SUMMARY JUDGMENT ON THE *MARTINEZ* REPORT

THIS MATTER is before the Court on defendants' motion for summary judgment, filed on October 16, 2015.  Doc. 19.  Plaintiff Rufus Byers filed his response to the motion and a response to the *Martinez* report[1] on November 9, 2015 (Docs. 20, 21), and defendants filed their reply on December 3, 2015 (Doc. 22).  The Honorable Chief Judge M. Christina Armijo referred this case to me to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case.  Doc. 17.  Having reviewed the submissions of the parties and the relevant law, and being otherwise fully advised, I recommend that the Court grant defendants' motion for summary judgment (Doc. 19) as to Byers's federal claims for violation of 42 U.S.C. § 1983 (counts I, II, and III) and dismiss these claims with prejudice.  I further recommend that the Court decline to exercise supplemental jurisdiction over Byers's state law tort claims (counts IV and V) and remand these claims to state court.

---

[1] The *Martinez* report and its exhibits are contained in Document 18.

**Introduction**

Byers filed this lawsuit in state district court, and defendants removed the case to this Court. *See* Doc. 1. In his complaint, Byers alleges four events which form the basis of his claims. First, Byers alleges that during his 20-hour bus transport from the Bernalillo County Metropolitan Detention Center ("MDC") to a prison in Texas, he was not given a restroom break and was tightly handcuffed. Doc. 1-2 at 3. Byers says that during the transport, his handcuffs "were so tight that [his] hand went numb," *id.*, and that, despite his complaints, transport officers did not check or loosen his cuffs, Doc. 21 at 7. Second, Byers alleges that he was denied phone calls to his family, friends, and attorney to inform them of his whereabouts. Doc. 1-3 at 1. Byers claims that he did not know he was going to be transported, and that he should have been allowed to use the telephone. Doc. 20 at 5. Third, Byers alleges that he was "illegally" strip searched prior to being transported. He specifically alleges that during the strip search he was "mal[i]ciously and sexually ben[t] over, made to hold [his] 'Growings,' [and] spread his butt che[e]ks." Doc. 1-2 at 3. Byers also alleges that the officer performing the strip search violated MDC policies by "put[ting] his finger wearing a rub[b]er glove in [his] mouth" and by using his boot to spread his legs apart. Doc. 20 at 9. Byers alleges that the officer lacked "reasonable suspicion" to strip search him because he had not had contact with the public or exposure to public areas. *Id.* Fourth, Byers alleges that he was "illegally" transported across state lines. Doc. 1-3 at 1.

In Count I of his complaint, Byers alleges "municipal and counties liability" based on policies, procedures and customs being the moving force behind the alleged constitutional violations. Doc. 1-3 at 1–2. In Count II, Byers alleges "municipal and counties liability" based on a failure to follow policies and procedures—claiming that there is a "de facto policy of

ignoring such actions by Defendants['] law enforcement agents." *Id.* at 2.  In Count III, Byers

alleges supervisory liability based on failure to train and supervise officers conducting long

distance transports and strip searches for MDC.  *Id.* at 2–3.  In Count IV, Byers alleges a state

tort law claim for assault and battery, *id.* at 3, and in Count V, he alleges a state tort law claim

for intentional infliction of emotional distress, Doc. 1-4 at 1.

Defendants raise three arguments for granting summary judgment on the alleged

constitutional violations in counts I, II, and III:  (1) defendants Ramon Rustin, Tom Zdunek, and

Thomas Swisstack ("individual defendants")[2] did not personally participate in the alleged

constitutional violations, as required under § 1983; (2) defendant Bernalillo County Board of

Commissioners cannot be held liable based on *respondeat superior*, and (3) Byers's Eighth

Amendment claims fail because he was not incarcerated under conditions posing a substantial

risk for harm, and because defendants did not act with deliberate indifference.  I recommend that

the Court grant summary judgment on the constitutional claims on the basis of the first two

arguments.  The Court therefore need not address the third.

Defendants also raise three arguments in support of granting summary judgment on

Byers's state tort law claims (counts IV and V).  However, I recommend that the Court decline to

exercise supplemental jurisdiction over the state tort law claims, and that it remand this claims to

state court.

---

[2] Ramon Rustin was the Chief of Corrections at MDC from 2011 until April 7, 2014.  *Martinez* report ("MR") 90.  Tom Zdunek was the Bernalillo County Manager from 2011 until October 2, 2015.  MR 81.  Thomas Swisstack is the Bernalillo County Deputy County Manager for Public Safety.  MR 40.  The page citations refer to the Bates stamp numbers located at the bottom of each page of the exhibits to the *Martinez* report (Docs. 18-1 to 18-24).

I.    **Standard of Review**

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.  A "genuine" dispute exists where the evidence is such that a reasonable fact-finder could resolve the issue either way.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record," and such materials must be in a form that would be admissible in evidence.  FED. R. CIV. P. 56(c)(1)(A), (2).  Parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1)(B).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  The moving party need not negate the nonmovant's claim, but instead may show that "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc.*

*v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant meets this burden, the non-moving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (internal citation omitted).

The nonmoving party cannot rely upon conclusory statements to defeat summary judgment. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). Rather, the nonmoving party must go beyond the allegations and denials of the pleadings and "designate 'specific facts'" showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324; *Anderson,* 477 U.S. at 256; *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). If the nonmoving party fails to properly address the movant's properly supported assertions of fact as required by Rule 56(c), a district court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3).

When considering a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*). The Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue of material fact exists, requiring a trial. *Anderson*, 477 U.S. at 249. Further, the Court cannot decide issues of credibility. *Id.* at 255.

For purposes of summary judgment, the Court treats a prisoner's complaint as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). The Court also treats a

5

*Martinez* report as an affidavit. *Id.* The Court may use the report and the supporting documents in determining whether to grant summary judgment if the report's statements are based on personal knowledge and are sworn under penalty of perjury. *Id.*; *see also* Doc. 15 at 2 (notifying parties that the report may be used in deciding whether to grant summary judgment on plaintiff's claims, whether by motion or *sua sponte*). The Court cannot resolve material disputed factual issues by accepting a *Martinez* report's findings when they are in conflict with sworn pleadings or affidavits. *Hall*, 935 F.2d at 1109. As is true with all affidavits, statements of mere belief must be disregarded. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006). "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. However, "it is [not] the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*

## II.    Facts

Plaintiff Rufus Byers was detained at the Bernalillo County Metropolitan Detention Center ("MDC") several times: March 20, 2012 through August 27, 2013; October 20 to 30, 2013; December 17, 2013 through February 14, 2014; and March 25 to 26, 2016. Undisputed Material Fact ("UDMF")[3] 2; MR 37. Because of overcrowding, MDC contracted with other facilities to house detainees. UDMF 7; MR 40–41, 81, 91.[4] On February 14, 2014, MDC sent Byers to one of these contracting facilities—the IAH Secure Adult Detention Facility located in

---

[3] Undisputed Material Facts are from Defendants' Motion for Summary Judgment, Doc. 19 at 3–10.

[4] The maximum capacity for the number of detainees at MDC was set by the settlement agreement in *McClendon et al. v. City of Albuquerque et al.*, 272 F. Supp. 2d 1250, 1255 (D.N.M. 2003). *See* Doc. 18 at 4; MR 40, 81, 91. On July 1, 2006, Bernalillo County replaced the City of Albuquerque as the entity responsible for running MDC. Doc. 18 at 4; MR 39.

Polk County, Texas ("Polk County").[5]  UDMF 17; MR 48, 96.  Sometimes a Polk County team,

and sometimes an MDC team, would transport detainees from MDC to Polk County.  UDMF 9,

10, 11; MR 47, 92–93.  There is no evidence in the record, or allegations in the complaint,

indicating whether Polk County or the MDC team transported Byers to Polk County on February

14, 2014.

 At the time of Byers's transport, MDC transport teams operated under the following

standard operating procedures:  (1) Detainees being transported were to be restrained with

double-locked leg irons and handcuffs.  UDMF 18, 19, 20; MR 74, 93–94.  (2) If a detainee

complained of overly tight cuffs, MDC staff were to check the cuffs for proper fit.  UDMF 21;

MR 94.  (3) MDC transport vehicles taking detainees to Polk County were to stop in Muleshoe,

Texas to provide the detainees with a sack lunch, water, and restroom facilities.  UDMF 22, 23;

MR 94.  (4) MDC transport teams were to allow inmates to use the restroom upon request.

UDMF 25; MR 74.[6]  The defendants deny any knowledge of the transport policies and

procedures governing the Polk County transport bus.  UDMF 26; MR 94.  The individual

---

[5] Byers alleges that he was "illegal[ly] transport[ed] . . . across state line[s]."  Doc. 1-3 at 1.
Byers's Repeat Offender Judgment, Sentence and Commitment from the Second Judicial District
Court states that Byers was to serve his sentence at the New Mexico Department of Corrections.
MR 5.  However, this document was not filed until February 24, 2014—ten days after Byers was
transported to Polk County.  *See id.* at 4.  In addition, "[t]he Constitution does not . . . guarantee
that the convicted prisoner will be placed in any particular prison."  *Meachum v. Fano*, 427 U.S.
215, 224 (1976).  And, "[j]ust as an inmate has no justifiable expectation that he will be
incarcerated in any particular prison within a State, he has no justifiable expectation that he will
be incarcerated in any particular State."  *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983).

[6] While defendants state that Byers disputes some of these material facts, *see* Doc. 22 at 2, the
Court does not agree.  While Byers denies that these policies were followed on his particular
transport, *see* Doc. 20 at 7, he submits no credible evidence showing that these were not the
official policies and procedures for the MDC transport teams, or any evidence that they were
supplanted by other de facto policies or procedures.

defendants had no personal participation or involvement in the transfer of MDC detainees to other facilities.  UDMF 31; MR 41, 82, 91.

Whether a detainee was transported by the MDC team, or by Polk County, it was standard operating procedure at MDC to:  (1) search all detainees prior to transport, UDMF 33; MR 93; (2) strip search detainees when there was a "reasonable belief" that the detainee may possess contraband, such as where the detainee had "contact with the public or exposure to public areas," UDMF 36; MR 67; (3) conduct strip searches with two officers of the same gender present, UDMF 37; MR 70; (4) not touch inmates during strip searches, "except as required to control the individual," and to include a visual inspection of the inmate's mouth, ears, hands, groin area, arm pits and feet, UDMF 38; MR 71; (5) instruct an inmate "to squat and cough to ensure that contraband is not concealed," UDMF 38; MR 71; (6) thoroughly search inmates prior to transport, and to conduct a strip search when there was "describable suspicion," UDMF 39; MR 73.

MDC maintained the following standard operating procedures concerning phone calls by detainees:  (1) detainees were permitted reasonable telephone access to communicate with attorneys and make social and business calls, UDMF 42; MR 72; and (2) detainees scheduled for transport were not permitted to communicate with outside individuals prior to transport, UDMF 43, MR 93.  The ban on pre-transport telephone calls was in place to avoid compromising security for transport officers and detainees during transport.  UDMF 44, 46; MR 93.

The individual defendants had no personal participation or dealings with Byers.  UDMF 32; MR 41, 82, 91.

III.   **Analysis**

Section § 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 creates only a right of action; it "[does] not create any substantive rights, but merely enforce[s] existing constitutional and federal statutory rights." *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002).  To assert a claim under § 1983, a plaintiff must establish

> (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State . . . .

*Summum v. City of Ogden*, 297 F.3d 995, 1000–01 (10th Cir. 2002) (internal citations omitted).

### A.   **Byers failed to show that the individual defendants were personally involved in the alleged constitutional violations.**

Defendants argue that the individual defendants are entitled to summary judgment because Byers fails to show any "affirmative link" between the alleged constitutional deprivations and defendants' "personal participation . . . exercise of control or direction, or . . . failure to supervise."  Doc. 19 at 13.  Defendants argue that Byers's "factual averments are solely based upon the alleged conduct of unidentified MDC staff."  *Id.*  For the reasons discussed below, I agree and recommend the Court grant summary judgment for the individual defendants on this basis.

The Supreme Court has made it clear that there is no *respondeat superior* liability under 42 U.S.C. § 1983.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).  "Because vicarious liability

9

is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Thus, under § 1983, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677.

Although the Tenth Circuit noted that "*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit[,]" it concluded that it did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." *Dodds v. Richardson*, 614 F.3d 1185, 1200 (10th Cir. 2010). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997) (internal citation omitted). Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (internal citation omitted).

Supervisory defendants may be liable under § 1983 "where an affirmative link exists between the unconstitutional acts by their subordinates and their adoption of any plan or policy —express or otherwise—showing their authorization or approval of such misconduct." *Dodds,* 614 F.3d at 1200–01 (internal citation, quotations, and omissions omitted). "[I]t is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Instead, a plaintiff must show that the "defendant-supervisor personally directed the violation or had actual

knowledge of the violation and acquiesced in its continuance." *Id.* at 995.  A plaintiff may

succeed in a § 1983 suit against a defendant-supervisor by showing the following:

> (1) the defendant promulgated, created, implemented or possessed responsibility
> for the continued operation of a policy that (2) caused the complained of
> constitutional harm, and (3) acted with the state of mind required to establish the
> alleged constitutional deprivation.

*Dodds*, 614 F.3d at 1199–1200 (citing *Summum*, 297 F.3d at 1000).  A plaintiff also must show

that the alleged unconstitutional policies were a "deliberate or conscious choice." *Barney v.*

*Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (internal quotation and citation omitted).

Here, there is no evidence that the individual defendants personally participated in the

alleged constitutional violations.  None of the individual defendants personally participated or

had any involvement in the transfer of MDC detainees to other facilities.  *See* UDMF 31; MR 41,

82, 91.  None of the individual defendants had any personal participation or dealings with Byers.

*See* UDMF 32; MR 41, 82, 91.[7]

Also, as defendants point out, "there is no competent evidence that the individual

defendants failed in a duty to supervise, direct, or control MDC subordinate employees."  Doc.

19 at 14.  While Byers repeatedly asserts that the individual defendants have a general duty to

ensure the health and safety of all inmates, Doc. 20 at 2, 4, 10, a failure to carry out this general

duty is not enough to create a viable § 1983 claim:

> [I]t is not enough to merely show that a supervisor should have known that a
> subordinate was violating someone's constitutional rights. . . .  Instead, only a
> supervisor's *actual knowledge* of his subordinates' behavior will demonstrate the

---

[7] Byers argues that summary judgment should not be granted until he is allowed additional
discovery.  Doc. 20 at 2–3.  However, the discovery he requests, such as videos of the strip
search and transport, at best, would show that the individual officers performing the strip search
and transport violated MDC policies.  This evidence is irrelevant to his claims against the
defendants he has named in this lawsuit.  *See Jenkins,* 81 F.3d at 995 (plaintiff must show that
the "defendant-supervisor personally directed the violation or had actual knowledge of the
violation and acquiesced in its continuance").

> requisite deliberate, intentional act by the supervisor to violate constitutional
> rights. Negligence—even gross negligence—is insufficient to prove that the
> supervisor caused a violation.

*Dodds*, 614 F.3d at 1211 (Tymkovich, J, concurring) (internal citations and quotations omitted;

emphasis in original). Byers points to no evidence in the record showing that the individual

defendants had actual knowledge of the alleged violations.

Furthermore, there is no evidence supporting Byers's claims that the alleged

constitutional violations resulted from a failure to train. Byers alleges supervisory liability based

on "failure to train officers for long distance transport" and failure to train and/or supervise

officers doing a strip search. Doc. 1-3 at 2–3; *see also* Doc. 20 at 14–15 ("it is every defendants

[r]ight to train all officers and staff to avoid inflicting punishment to inmates"). But to prevail on

a failure-to-train claim, the plaintiff bears the burden of showing "a specific deficiency in the

county's training program closely related to his ultimate injury, and must prove that the

deficiency in training actually caused his jailer to act with deliberate indifference to his safety."

*Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (citing *City of Canton v. Harris*, 489 U.S.

378, 391 (1989)). The plaintiff must show this same causal nexus for claims based on a failure

to supervise. *Id.* Here, like the plaintiff in *Lopez,* Byers

> not only did not name his jailer as a defendant in this suit, he failed to identify
> him at all. That omission seriously undermines his attempt to hold the county
> liable for any actions deliberately taken by the jailer. Appellant has presented no
> evidence concerning deficiencies in training of the particular jailer involved in his
> case. Nor has he shown that the county had a uniform policy of providing its
> jailers with insufficient training in the areas closely related to his ultimate injury
> from which we might infer that his particular jailer's training also was
> insufficient.

*Lopez*, 172 F.3d at 760.  Byers fails to point to any evidence showing the requisite causal nexus between the claimed failures to train or supervise and his alleged injury.  Therefore, as in *Lopez*, summary judgment is appropriate.

Finally, Byers makes only bare assertions that the alleged constitutional violations were done pursuant to a policy.  *See* Doc. 1-3 at 2.  He does not point to any specific policy or procedure which he deems unconstitutional, or which he alleges caused the complained of constitutional harm.  Instead, Byers alleges failure to follow the policies or procedures by the individual officers conducting the strip search and running the transport van.  *See* Doc. 20 at 9 (Byers "denies that policies and procedures were followed" during the strip search, and alleges that officer conducting the strip search violated policy by touching him during the search); *see also* Doc. 21 at 4 (Byers demands proof that transport procedures were followed and that he was provided "with a restroom stop, water, and sack lunch").  Byers fails to point to any evidence showing that the named defendants "promulgated, created, implemented or possessed responsibility for the continued operation of a policy" which "caused the complained of constitutional harm."  *Dodds*, 614 F.3d at 1199.

In conclusion, Byers has failed to establish any affirmative link between any of the alleged constitutional violations and any of the individual defendants' personal involvement—including their exercise of control or direction, or their failure to supervise or train.  In addition, he fails to show that any of the individual defendants created or continued a policy which caused the alleged constitutional harms.  Therefore, the Court should grant summary judgment to the individual defendants.

**B.   Byers failed to show any basis for municipal liability against defendant
Bernalillo County Board of Commissioners.[8]**

*Respondeat superior* does not apply to local governments, and "a local government may

not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v.

Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978).  "Instead, it is when

execution of a government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under § 1983." *Id.*  "[I]n order to hold a municipality

liable for an employee's constitutional violations, a plaintiff must show not only that a

constitutional violation occurred, but also that some municipal policy or custom was the moving

force behind the violation."  *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs,* 151 F.3d 1313, 1320

(10th Cir. 1998) (citing *City of Canton*, 489 U.S. at 385).[9]  To make out a viable § 1983

supervisory liability claim, a plaintiff must "identify the specific policies over which particular

---

[8] Suing an individual employee in his official capacity is the same as suing the governmental
agency.  *Lopez*, 172 F.3d at 762.  It is unclear whether Byers intended to sue the individual
defendants in their official capacities, but to the extent that he did, these official capacity claims
would be treated as claims against the Bernalillo County Board of Commissioners.

[9] The Tenth Circuit has described the type of thing that may constitute a municipal custom or
policy:

>        A municipal policy or custom may take the form of (1) a formal regulation
> or policy statement; (2) an informal custom amounting to a widespread practice
> that, although not authorized by written law or express municipal policy, is so
> permanent and well settled as to constitute a custom or usage with the force of
> law; (3) the decisions of employees with final policymaking authority; (4) the
> ratification by such final policymakers of the decisions—and the basis for them—
> of subordinates to whom authority was delegated subject to these policymakers'
> review and approval; or (5) the failure to adequately train or supervise employees,
> so long as that failure results from deliberate indifference to the injuries that may
> be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks,
brackets, and citations omitted).

defendants possessed responsibility and that led to the alleged constitutional violation." *Pahls v. Thomas,* 718 F.3d 1210, 1226 (10th Cir. 2013) (citing *Dodds*, 614 F.3d at 1203–04).

Byers fails to identify any specific policy which led to his claimed constitutional violations. Byers alleges that defendants maintained a "de facto policy of ignoring" constitutional violations by their employees. *See* Doc. 1-3 at 2. However, Byers submits no credible evidence to support this conclusory allegation. Byers fails to make out a viable supervisory liability claim based on a policy or procedure. Therefore, the Court should grant summary judgment to defendant Bernalillo County Board of Commissioners.

## C. The Court should decline to exercise supplemental jurisdiction over plaintiff's state law tort claims.

Should the Court grant summary judgment on the federal claims, Byers is left with two state law tort claims: assault and battery (count IV), and intentional infliction of emotional distress (count V). Docs. 1-3 at 3, 1-4 at 1. A district court may decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal citation omitted); *see also Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7, 357 (recognizing that, when "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent [or supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims" and concluding that "a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate").

15

The state court is in a better position to interpret and apply the appropriate state law to resolve the state law claims.  Accordingly, I recommend that the Court remand Byers's state law tort claims (counts IV and V) to state court.

**Recommendation**

For the reasons stated above, I recommend that the Court grant defendants' motion for summary judgment and dismiss counts I, II and III of the complaint with prejudice.  I also recommend that the Court decline to exercise supplemental jurisdiction over Byers's state tort law claims and remand counts IV and V to state court.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(C).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

Laura Fashing
United States Magistrate Judge

16